# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | ~~Arlander Keys~~ *Guzman* | Sitting Judge if Other than Assigned Judge | ~~Ronald Guzman~~ *Keys* |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1700 | **DATE** | 9/5/2002 |
| **CASE TITLE** | Robin Zahran and Karen Zahran vs. Trans Union Corp., Equifax, and La Chapelle Credit Service, Inc., | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **IT IS HEREBY ORDERED** that Trans Union's Motion for Protective Order and Filing Under Seal of the Zahrans' Response to Trans Union's Motion for Summary Judgment be, and the same hereby is **DENIED**. The Defendant must file reply to its Motion for Summary Judgment by September 19, 2002. All matters relating to the referral of this action having been resolved, the case is returned to the assigned Judge.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | 9-9-02 | |
| | Notified counsel by telephone. | date docketed | 55 |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| AC | courtroom deputy's initials | | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



ROBIN ZAHRAN and KAREN ZAHRAN, )
                                )  Case No. 01 C 1700
            Plaintiffs,          )
                                )
       v.                        )  Hon. Ronald A. Guzman
                                )
TRANS UNION CORP., EQUIFAX,      )  Magistrate Judge
and LA CHAPELLE CREDIT SERVICE,  )  Arlander Keys
INC.,                            )
                                )
            Defendants.          )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Robin and Karen Zahran (the "Zahrans") filed suit against the Defendants Trans Union Corp., Equifax, and LaChapelle Credit Service, Inc. for various alleged conduct in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (2002).[1] Trans Union Corp. ("Trans Union") moves the Court, pursuant to Federal Rule of Civil Procedure 26(c)(7), for the entry of a protective order and filing under seal certain exhibits filed by the Zahrans and various statements contained in the Zahrans' pleadings. For the reasons set forth below, the Court denies Trans Union's motion.

---

[1] This case was originally filed in state court but was subsequently removed to federal court on March 9, 2001.



**BACKGROUND**

The Zahrans are alleging that Trans Union furnished erroneous financial information to certain of their creditors or entities with which they were currently engaging, or hoping to engage, in business. (*See generally*, Compl. at 2.) Trans Union denies this allegation and has moved for summary judgment.

In their responsive pleadings, the Zahrans assert that Trans Union failed to follow its established procedures to minimize errors and make corrections in the Zahrans' disputed credit reports. (Zahrans' Mem. Opp. Trans Union's Mot. Summ. J. at 14.) The Zahrans have attached certain exhibits to their responsive pleadings, which Trans Union argues contain trade secrets and confidential commercial information that are entitled to a protective order.[2] (Trans Union's Mem. Supp. Mot. Filing Under Seal at 1.) The exhibits in question contain portions of Trans Union's Consumer Relations Center Dispute Training Guide (the "Dispute Training Guide"), as well as seven subscriber agreements entered into between Trans Union and several of its customers (the "Subscriber Agreements"). (*Id.* at 1-2.) Further, Trans Union

---

[2] The parties have previously stipulated to an agreed protective order (the "Agreed Order"). However, prior to the Court's ruling, the Zahrans withdrew from the Agreed Order in open court on July 12, 2002, and now oppose the entry of any protective order.

2

argues that paragraphs 234 through 251 of the Zahrans' Statement of Facts in Opposition to Trans Union's Motion for Summary Judgment and in Support of the Zahrans' Motion for Summary Judgment ("Paragraphs 234 through 251") contain information and reference materials that are confidential and deserving of a protective order. (*Id.* at 1-2, n.1.)

## **DISCUSSION**

Pretrial discovery is often performed in private, although "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999). However, in order to protect the privacy interest of the parties throughout the proceedings, Federal Rule of Civil Procedure 26(c)(7) permits a court to grant a protective order "for good cause shown. . . .[in order that] a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way. . . ." FED. R. CIV. P. 26(c)(7)(2002)("Rule 26(c)(7)").

A court need not grant a protective order unless it is satisfied that the order is being sought for an actual trade secret or confidential business information and that there is good cause for the protective order. *See, Citizens*, 178 F.3d at 946; *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297, 300 (N.D. Ill.

3

1993)(citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). A showing of good cause prevents parties from having "carte blanche to decide what portions of the record shall be kept secret," and prohibits courts from "rubber stamp[ing] a stipulation to seal the record." *Citizens*, 178 F.3d at 945.

The Seventh Circuit has recently ordered that all parties seeking protective orders before it provide a detailed account of which documents the parties wish to cloak in secrecy and to provide legal reasoning and authority. *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 548 (7th Cir. 2002). The court ruled that bald assertions of confidentiality, such as a statement by a movant that "disclosure could . . . harm [the movant's] competitive position" is insufficient. *Id.* at 547 (internal quotation omitted). The court observed that documents containing both trade secrets and non-protectable information need only have certain portions of the documents redacted in order to maintain trade secrecy. *Citizens*, 178 F.3d at 945.

## A. **Trans Union Dispute Training Guide and Dispute Procedures**

Courts have used the Restatement of Torts definition of "trade secret" when deciding whether certain business information should be covered under Rule 26(c)(7). *See e.g., Cook Inc. v. Boston Scientific Corp.*, 206 F.R.D. 244, 248 (S.D. Ill. 2001); *DDS, Inc. V. Lucas Aerospace Power Transmission Corp.*, 182 F.R.D. 1, 4

4

(N.D.N.Y. 1998); *Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 393 (D. Utah 1991). Pursuant to Section 757 of the Restatement of Torts, "[a] trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." RESTATEMENT OF TORTS § 757 cmt. b (1939).

Trans Union asserts that the contents of Paragraphs 234 through 251 consist of "restatements and characterizations of various Trans Union contractual, policy, and procedural provisions." (Trans Union's Mem. Supp. Mot. Filing Under Seal at 1-2.) Apparently, Trans Union seeks a protective order and filing under seal of these "restatements and characterizations," as well as the materials which the Zahrans reference within those paragraphs, including portions of the Dispute Training Guide. (*Id.* at 2, n.1.) Trans Union argues that Paragraphs 234 through 251 contain trade secrets and other confidential business information. (*Id.* at 2-3.)

Trans Union asserts that its Consumer Relations Division policies and procedures, including the Dispute Training Guide, are proprietary and were developed internally at significant expense over a period of many years. (*Id.* at 3-4.) Trans Union argues that it would be disadvantaged if competitors gained access to the

Dispute Training Guide or had knowledge of its consumer relations systems and departments. (*Id.* at 4.) Trans Union asserts that competitors could duplicate its business methods without incurring any expense. (*Id.*) Further, Trans Union argues that a person who somehow gains unauthorized access to the system could alter the consumer credit database using the information contained in the Dispute Training Guide, thereby compromising the "integrity and security" of the database. (*Id.* at 5-6.)

The Court is not convinced that the information contained or referenced in Paragraphs 234 through 251, including certain parts of the Dispute Training Guide, is the type of information contemplated by Rule 26(c)(7) as a trade secret or commercial information. The statements in Paragraphs 234 trough 251 do nothing more than state certain of Trans Union's general procedures for resolving errors in credit reports and Trans Union's alleged failure to follow its protocol in the Zahrans' case. (*See generally*, Pl's State. of Facts 234-251.) The Court does not see how the Zahrans' assertions in these disputed paragraphs divulge any Trans Union trade secrets, and to the extent that Paragraphs 234 through 251 refer to certain documents, the Court finds that these documents are undeserving of a protective order, as further explained below.

In all actuality, the portions of the Dispute Training Manual

included in the Zahrans' exhibits, which outline procedures for consumer relations personnel to handle consumer credit disputes, are not rocket science. In the case at bar, the Court is not faced with the disclosure of the actual computer software used to design Trans Union's consumer credit database or the decision-making process that determines how or why certain information is placed on an individual's credit report in the first place. Here, the Court is only confronted with the data entry of consumer information, complaints, definitions and instructions on how to access consumer dispute history or similar screens. The Court concludes that the function commands, keystrokes, data entry instructions, and general computer codes in the Dispute Training Guide are not a "formula, pattern, device or compilation of information" that gives Trans Union an advantage over competitors. The Court does not see how a competitor will be advantaged if information relating to which keystrokes access which screens in the database is disclosed or if information about which departments handle various consumer inquiries becomes public knowledge.

Finally, even if the Dispute Training Guide or Trans Union's other policies and procedures were trade secrets, Trans Union has not shown the Court good cause as to why a protective order is the appropriate remedy. As mentioned above, the Court does not find that Trans Union would be competitively disadvantaged if the

7

information was accessed by competitors. The process which determines how or why certain information is inserted into an individual's credit report and becomes part of a credit report retains its secrecy and has not been disclosed.

Trans Union's hypothetical hacker scenario does not convince the Court that Trans Union has good cause to protect its alleged trade secret. Once the hackers gain access, the integrity and security of Trans Union's system is already compromised. The Court declines to grant a protective order because of the remote *possibility* that someone *could* hack into the database and alter information, *possibly* using the information gleaned from the Dispute Training Guide. Certainly, someone sophisticated enough to hack into a computer network or server has the ability to wreak havoc with or without knowing that a particular keystroke or computer command accesses a person's credit dispute history. The hackers can accomplish this feat by simply pressing random keys on the keyboard. The argument that the Dispute Training Guide must be filed under seal, because hackers could use the information in the Training Guide and compromise the system is specious. As mentioned previously, the assignment of commands to certain keys is not a "formula" that the Court deems worthy of secrecy in litigation.

The Court does not find that Trans Union's dispute resolution procedures, including the Dispute Training Guide, contain trade

8

secrets or confidential commercial information to justify a protective order or filing under seal. Neither has Trans Union adequately established how it would be commercially disadvantaged if the information was disclosed.

B. **Trans Union Subscriber Agreements**

The Zahrans claim that Trans Union failed to follow its own policy as stated in its contracts with various subscribers to its services. (*See*, Pl.' State. of Facts ¶ 235.) One of the Zahrans' arguments is that Trans Union failed to terminate its Subscriber Agreement with LaChapelle after LaChapelle provided erroneous information about Mr. Zahran to Trans Union, which Trans Union subsequently placed in Mr. Zahran's credit report. (Zahrans' Mem. Opp. Trans Union's Mot. Summ. J. at 4.) Trans Union asserts that each of the Subscriber Agreements attached as exhibits to the Zahrans' Memorandum contains carefully negotiated terms between it and each subscriber. (Trans Union's Mem. Supp. Mot. Filing Under Seal at 5.) Trans Union argues that, without a protective order, its competitors will be able to lure Trans Union's subscribers away by offering more favorable terms. (*Id.*)

The Court found little, if any, differentiation among the seven Subscriber Agreements. Most of the Subscriber Agreements appear to be form contracts with no difference in material terms and containing mostly boilerplate language. Although Trans Union

9

goes beyond the bald assertions of confidentiality that *Baxter* criticizes, and contends that certain terms are truly sensitive, the Court concludes that a protective order is inappropriate for these Subscriber Agreements.

Further, the terms which Trans Union argues are especially confidential, such as payment terms, including fees, penalties for late payments and covenants relating to rebates and refunds, are virtually identical in each Subscriber Agreement. The Court points out that most of the contracts do not even provide for a payment amount, and two of the contracts state that the "membership fee" is "$ Standard" or "$ 0.00." Further, most, if not all, of the Subscriber Agreements contain virtually identical provisions relating to penalties, refunds and rebates, and duration of the contracts. The Court remains unconvinced that these terms are anything more than standard contract language, not necessarily unique to Trans Union, given the fact that the terms are practically the same in each of the seven contracts. The Court holds that a protective order is not necessary for the Subscriber Agreements given the lack of any material difference in any of the contracts, and the fact that the contracts lack any significant terms or covenants that the Court finds would commercially disadvantage Trans Union if disclosed.

## CONCLUSION

Trans Union has not shown that the Dispute Training Guide, Paragraphs 234 through 251 of the Zahrans' Statement of Facts, nor the Subscriber Agreements contain trade secrets or confidential commercial information deserving of a protective order. Further, assuming some of these documents may contain confidential commercial information, Trans Union has not shown good cause as to why a protective order is appropriate.

**IT IS HEREBY ORDERED** that Trans Union's Motion for Protective Order and Filing Under Seal of the Zahrans' Response to Trans Union's Motion for Summary Judgment be, and the same hereby is, **DENIED**.

DATED: September 5, 2002

E N T E R:

ARLANDER KEYS
United States Magistrate Judge