# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 1700 | **DATE** | 3/28/2003 |
| **CASE TITLE** | ROBIN ZAHRAN and KAREN ZAHRAN vs. TRANSUNION CORP., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant Trans Union's motion for summary judgment [27-1] is granted. This Court further concludes that Plaintiffs have abandoned their claim against Defendant LaChapple Credit Services because of the lack of services or process as well as failure to prosecute the case in any manner whatsoever as to this Wisconsin defendant. This case is hereby terminated. This is a final and appealable order. ENTER MEMORANDUM OPINION AND ORDER.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | MAR 31 2003 | | |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | docketing deputy initials | 59 |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT | | | |
| | Copy to judge/magistrate judge. | CLERK | | | |
| CG | courtroom deputy's initials | 03 MAR 31 PM 2:49 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN ZAHRAN and KAREN ZAHRAN, | ) | Civil Action No.: 01 C 1700 |
| | ) | |
| Plaintiffs | ) | Hon. Ronald Guzman |
| | ) | |
| v. | ) | Magistrate Judge Keys |
| | ) | |
| TRANSUNION CORP., EQUIFAX, and | ) | |
| LaCHAPPLE CREDIT SERVICE INC., | ) | |
| | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION AND ORDER

This case is now before the Court upon defendant Trans Union's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, defendant's motion for summary judgment is granted as to all Counts of the complaint.

### STATEMENT OF FACTS

Pursuant to Local Rule 56, all facts contained herein are either undisputed and supported by accompanying documents or deemed admitted through a failure to properly respond to the allegation by the opposing party.[1]

---

[1] In *Malec v. Sanford*, 191 F.R.D. 581 (N.D. Ill. 2000), the Seventh Circuit discussed the proper method of establishing facts through the record - in accordance with the Federal Rules of Civil Procedure, the Local Rules, and the common law. *Malec*, 191 F.R.D. at 582-84. Many of the individually numbered factual assertions set forth by the plaintiffs do not conform with such requirements. Several paragraphs do not cite supporting documents (e.g. ¶¶ 1-3, 5, 11, 20, 25,

1



Trans Union is a consumer reporting agency ("CRA") as that term is defined in the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681a. Plaintiffs Robin and Karen Zahran ("Zahrans"), who live in Oak Brook, Illinois, own approximately one thousand acres of property in Denmark, Wisconsin, including parcels used for farming as well as rental properties. Over the course of several years, the Zahrans have been involved in a number of lawsuits. A variety of tax liens and releases of tax liens have been recorded in their names in Illinois. The Zahrans have also been involved in numerous disputes with various creditors.

Beginning in February, 2000, the Zahrans commenced a series of disputes regarding information contained in their Trans Union credit reports. At that time, their reports included tax liens, civil judgments, a foreclosure judgment, a paid collection account, and accounts showing late payments to various creditors. Trans Union timely investigated each of the Zahrans claims and corrected or voluntarily changed a number of them. Not all of the Zahrans disputed accounts are the subject of this action. Discovery revealed that most of the disputed adverse credit references were accurately reported at all times by Trans Union. The errors in reporting, if any, were attributable to the errors of third parties such as the Court of Brown County.

The following items are the only ones in which some of the account information was not correct, as originally reported by Trans Union:

---

26, 34, 37, 48, 101, 105, 113, 123, 129, 148, 154, 156, 160-62, 174, 178-81, 199, 202, 215-18, 234, 238, 241, 242, 245, and 254). An equal number are irrelevant to the claims of the complaint (e.g. ¶¶ 3, 9, 18, 20, 21, 22, 24, 28, 29, 30, 31, 43, 44, 46, 47, 52, 84, 86, 94, 97-101, 125, 127, 139, 146, 149, 163-70, 172-75, 177, 203-08, 212, 222-25, 230-33, 255, 256, and [sic] 248-49). Other properly cited paragraphs were considered in reaching the determination of the Court.

| Civil Judgment, docket #94LM3466 (El-Masry Judgment | Accurate but for judgment amount: $18,956 listed instead of the correct amount of $11,974 | ¶¶ 19-22 |
|---|---|---|
| Civil Judgment, docket #98C1221 (Wegner Implement Judgment) | This judgment was entered, but the later reports did not show that it had been vacated on 9/10/1998 | ¶¶ 23, 24 |
| Denmark State Bank # 1505917915 | Accurate as to all terms except for the monthly payment amount | ¶¶ 28-36 |

**The Wegner judgment:**

On April 6, 1998, a default judgment against Robin Zahran and in favor of Wegner Implement, Inc., was entered in Small Claims Court in Brown County, Wisconsin. This judgment was reported to Trans Union. Subsequently, the judgment was vacated on September 1, 1998 on the Zahrans' motion. The order vacating the judgment was not reported to Trans Union by the court or the Zahrans. As a result, prior to the Zahrans' dispute of this item in February, 2000, Trans Union did not report that this judgment had been vacated. Though Trans Union, which obtains public record information from third party vendors, requests information on vacated judgments, it did not receive notice of the September 1998 order vacating the Wegner judgment until February 2000. (Trans Union's Statement of Facts, hereinafter "Facts," ¶ 75.)

**The El-Masry judgment:**

In 1998, Robin Zahran was a defendant and counter-plaintiff in a lawsuit filed by Youseff El-Masry in the Circuit Court of Kane County, Illinois (Case No. 94 LM 3466). A judgment in favor of El-Masry, for $11,974.47, was entered against Robin Zahran on March 23, 1998. Zahran's 1999 appeal of some order was ultimately dismissed for lack of appellate

3

jurisdiction. Robin Zahran never paid the judgment. Though the Zahrans claimed that this judgment should not be reported at all, as it was not final, they are incorrect and the only inaccuracy in reporting was that the judgment amount was incorrectly listed as $18,956. This was changed to reflect the correct amount within a short time. Otherwise, all information related to this item was at all times accurate.

**Denmark State Bank:**

Denmark State Bank held a series of mortgage notes on a portion of Zahrans' Wisconsin property. At various times Denmark State Bank reported that the loan terms called for monthly payments of $1,100. In fact, during the early years of this loan the Zahrans were required to pay $1,100 per month. At some point, the term of this loan was converted to a single annual payment. Nonetheless, Denmark State Bank or its computer services vendor (Metavante) periodically reinserted $1,100 as an amount in the field reporting monthly payment terms on the computer tapes sent to Trans Union. Denmark State Bank reported the $1,100 monthly payment term concerning the loan to Trans Union in 1997, 1998, 1999, and 2000. Apart from this term, all other information concerning this account was accurate as reported.

Plaintiffs filed this action in the Circuit Court of Cook County on February 9, 2001, and it was removed to the United States District Court for the Northern District of Illinois on March 9, 2001. The Defendant filed the current motion for summary judgment of the complaint in its entirety on April 26, 2002.

## DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with affidavits, if any, show that there is no genuine issue as to

4

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2003). Material facts are those facts which the substantive law identifies as "facts that might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute concerning material facts is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.* The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must then set forth specific facts showing there is a genuine issue of material facts and that the moving party is not entitled to judgment as a matter of law. *Id.*

When the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact. *Vanasco v. National-Louis University*, 137 F.3d 962, 965 (7th Cir. 1998). The opposing party may not merely allege in a general or conclusory fashion that issues of fact exist or might exist. Federal Rule of Civil Procedure 56(e); *see Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998). Finally, even where a factual dispute exists, unless the resolution of the disputed fact is outcome determinative, summary judgment will not be precluded. *Harris Trust and Sav. Bank v. Edelson*, 859 F.2d 553 (7th Cir. 1988).

The plaintiffs in this case are proceeding pro se. A pro se complaint is held to a "less stringent" standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). In this case, plaintiffs' submissions in response to the defendant's motion for summary judgment comes close to violating Local Rule 56.1 for not properly citing and

authenticating the documents they rely on to support their allegations. Nevertheless, the Court has evaluated plaintiff's arguments in response to defendant's motion for summary judgment.

## The Fair Credit Reporting Act ("FCRA")

The FCRA was enacted to ensure "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b). The Zahrans assert that Trans Union violated §§ 1681e, 1681i, & 1681n of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Section 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). Section 1681i(a)(5) provides that "[a] consumer reporting agency [must] maintain reasonable procedures designed to prevent the reappearance in a consumer's file, and in consumer reports on the consumer, of information that is deleted ...." 15 U.S.C. § 1681i(a)(5)(C). Section 1681i(a)(1)(A) provides that a consumer reporting agency must reinvestigate any item disputed by the consumer. 15 U.S.C. § 1681i(a)(1)(A).

Neither party disputes that Trans Union is a "consumer reporting agency" as defined under 15 U.S.C. § 1681a(f), that the credit reports produced were "consumer reports" under 15 U.S.C. § 1681a(d), and that the Zahrans are "consumers" under 15 U.S.C. § 1681a(c). Although some of the disputed items appearing on the Zahrans' report pertain to business ventures, business ventures on which the consumer is personally liable are rightfully included on a consumer credit report under the FCRA. 15 U.S.C. § 1681b(a)(1)(F)(i); *see Salei v. American*

6

*Express Travel Related Services Co.*, 134 F.3d 372, 373 (6th Cir. 1997). Additionally, the FCRA does not concern purely commercial dealings, as they are not of a consumer nature.[2] *Podell v. Citicorp Diners Club, Inc.*, 914 F. Supp. 1025, 1036 (S.D.N.Y. 1996).

A private right of action for willful and negligent non-compliance with the FCRA may result in the recovery of actual damages, attorney's fees and costs, and punitive damages is provided under 15 U.S.C. §§ 1681n and 1681o. *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995).

In order to state a claim under the FCRA, the plaintiff must demonstrate: (1) inaccurate information was included in their consumer credit reports; (2) the inaccuracy was due to the consumer reporting agency's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the injury was caused by the inclusion of the inaccurate entry. *Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 (3d Cir.1996). An additional

---

[2] It may be possible to determine that some of the reports in question are not governed by the FCRA because they were utilized for commercial purposes concerning the Zahrans' farming activities. Reprenentative Sullivan, a sponsor of the FCRA, stated that the FCRA "does not apply to reports utilized for business, commercial, or professional purposes." 116 Cong. Rec. 36,572 (1972). Likewise, the Federal Trade Commission (FTC) has concluded that "[t]he FCRA does not cover reports furnished for transactions that consumers enter into primarily for connection with businesses they operate." 16 C.F.R. Part 600 App., at 387 (1995). That position however appears to conflict with the way that courts have defined a consumer report. *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1273-75 (9th Cir. 1990) ("If a consumer reporting agency provides a report based on a reasonable expectation that the report will be put to a use permissible under the FCRA, then that report is a 'consumer report' under the FCRA" regardless of whether the report is actually used for a business purpose); *Ippolito v. WNS, Inc.*, 864 F.2d 440, 453 (7th Cir. 1988) ("even if a report is used or expected to be used for a non-consumer purpose, it may still fall within the definition of a consumer report if it contains information that was originally collected by a consumer reporting agency with the expectation that it would be used for a consumer purpose"). Because this Court concludes that the defendants did not violate the FCRA, the Court does not need to further explore the issue of whether all reports are governed by the FCRA.

source of liability is imposed when a credit report contains a factual deficiency or error that could have been remedied by reinvestigation. *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991); *Gaudreau v. Trans Union Corp.*, No. 00 C 50356, 2001 WL 936122, at *2 (N.D. Ill. Aug. 17, 2001). A negligent violation of §§ 1681i or 1681e(b) subjects the credit reporting agency to liability for actual damages. 15 U.S.C. § 1681o; *Pinner v. Schmidt*, 805 F.2d 1258, 1262 (5th Cir.1986). A knowing or willful violation subjects the credit reporting agency to liability for punitive damages. 15 U.S.C. § 1681n.

### Count I - Liability Under 15 U.S.C.§§ 1681e(b), 1681i, & 1681n of the FCRA.

Plaintiffs argue that all four of the elements as set forth in *Philbin*, 101 F.3d at 963, were present concerning their dealings with Trans Union. To prevail, Zahrans' must demonstrate that all of the following were present in this case: (1) inaccurate information was included in their credit report; (2) the inaccuracy was due to Trans Union's failure to follow reasonable procedures to assure maximum possible accuracy; (3) they suffered an injury; and (4) their injury was caused by the inclusion of the inaccurate information. *See Id.* Defendants argue that the information was correct as reported to Trans Union by sources of public record and their reliance on those documents and transmissions was, by law, reasonable. For the reasons that follow, the Court agrees with the defendants.

### 1. The Accuracy of the Credit Reports Provided by Trans Union

The first element of a claim under the FCRA is the inclusion of inaccurate information on the consumer's credit report. Several factual errors appeared to be present on the Zahrans' credit reports provided by Trans Union. These include Civil Judgment No. 94LM3466 reported for an inaccurate amount, Civil Judgment No. 985C1221 entered in Brown County, but not immediately

removed once vacated, and the loan from Denmark State Bank with varying and inaccurately updated terms listed. When viewing the facts in a light most favorable to the non-moving party, the Zahrans, the first element of a claim has been satisfied by demonstrating the existence of factually inaccurate information appearing on their consumer credit reports.

**2. The Reasonableness of Trans Union's Procedures to Ensure Reporting Accuracy**

The second element of a claim under the FCRA concerns reasonable reporting procedures ensuring maximum accuracy. This may be stated as follows: "Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681 e(b). The Zahrans' allege that the Trans Union's reports which included any of their disputed items establish a violation of this provision.

Plaintiffs have demonstrated that Trans Union prepared an inaccurate credit report under the first element of the FCRA. *See Henson v. CSC Credit Services*, 29 F. 3d 280, 284 (7th Cir. 1994); *Cahlin*, 936 F.2d at 1156. However, the inaccuracies alleged by the Zahrans do not demonstrate a violation of § 1681e(b), absent a showing that those inaccuracies resulted from Trans Union's failure to maintain and follow reasonable procedures. *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996); *Bryant v. TRW. Inc.*, 689 F.2d 72, 78 (6th Cir.1982); and *see Cahlin*, 936 F.2d at 1151(11th Cir. 1991). The ECRA does not hold a CRA strictly liable for reporting inaccuracies. *Cahlin*, 936 F.2d at 1156. If the credit reporting agency establishes that it followed reasonable procedures, it will not be liable even if an inaccurate report was generated. *Id.* Reasonable procedures are defined as measures that a reasonably prudent person would follow under the circumstances. *Bryant*, 689 F.2d at 78.

The FCRA is not a vehicle for consumers to collaterally attack the underlying basis of accurately reported public records. *Williams v. Colonial Bank*, 826 F. Supp 415, 418 (M.D. Ala. 1993). In determining liability under the FCRA, the court must weigh the potential harm from inaccuracies with the burden of safeguarding procedures against such inaccuracies. *Philbin*, 101 F.3d at 963. The Seventh Circuit has held that a credit reporting agency is not liable under the FCRA when it reports inaccurate information obtained from a court's judgment docket absent prior notice that the information was incorrect. *Henson*, 29 F.3d at 285. The court determined that verifying such information would be a burdensome and inefficient procedure for a credit reporting agency to engage in. *Id.* Additionally, independent verification of information provided by creditors is not needed absent knowledge that the information may be inaccurate. *Formusa v. Energy Sharing Resources, Inc.*, No. 96C50410, 1999 WL 436596, at *3 (N.D. Ill. June 28, 1998). If a defendant does not dispute that the items had been reported and only attacks the propriety of the report, summary judgment may be granted. *Williams*, 826 F. Supp at 417.

**A. Trans Union reported public record information accurately.**

As established by certified copies of documents and Plaintiffs own admissions, the tax liens, foreclosures, and civil judgments Trans Union reported accurately reflected duly filed public records concerning the plaintiffs. The foreclosure judgment in favor of Alvin and Dorothy Herlache, before it was vacated in June of 2000, was an accurate record of the Manitowoc County Circuit Court even months after Trans Unions March 2000 decision (not mandated by the FCRA) to delete the item in the face of Zahrans' threats and insistence that the judgment was on appeal. The same is true of the concerning the judgment in the court of Brown County which was not reported by the court as vacated. Additionally, the Zahrans did not supply Trans Union

10

with a copy of the vacated judgment until March 2000, and at that time Trans Union removed the disputed item from the report. Again, the same is true concerning the El-Masry judgment which only had issues concerning sanctions in dispute at the time of reporting. The FCRA does not require all appeals to be finalized prior to reporting. 15 U.S.C. § 1681c(a)(2). Trans Union was not obligated to further investigate the accuracy of public records such as these and their reporting procedures were reasonable under the FCRA.

**B. Trans Union reported Zahrans delinquencies with creditors accurately.**

Trans Union accurately reported information provided to it by LaChapelle Credit Service, Wisconsin Public Service Corporation, First National Bank of Manitowoc, Nicor, The Money Store, and Illinois Collection Service. Though Mr. Zahrans repeated contacts ultimately caused several of these creditors to change their reports (Facts, ¶¶ 42, 49, 83), the reports were accurate when reported by Trans Union. The Zahrans actually supplied Trans Union with documents supporting the delinquency of several of their accounts, including the one with the Money Store. There was no reason for Trans Union to believe that any information supplied to them on credit reports was inaccurate. Once there was reason to believe that a reported delinquency was inaccurate Trans Union took proper measures to investigate and remove the item.

Another example of an outside creditor reporting information to Trans Union that was later challenged and corrected concerns Denmark State Bank. The bank reported the $1,100 monthly payment as part of its routine monthly reporting to Trans Union from 1997 to April 1999. (Facts, ¶ 36.) During Trans Union's first investigation of the item in March 2000, the bank informed Trans Union that the $1,100 monthly payment was no longer in effect. (*Id.*, ¶ 83.) Accordingly, Trans Union's consumer relations staff removed the payment detail from the

11

account. (*Id.*, ¶¶ 84, 85.) The bank, however, again began reporting the $1,100 payment amount on its regular electronic transmissions to Trans Union. (*Id.*, ¶ 36.) Hence, new reports showing $1,100 in the monthly payment field appeared as the most current information reported by the bank. (*Id.*, ¶ 106.) When Trans Union investigated this in January 2001, a Denmark loan officer at that time verified that the information was indeed accurate (*Id.*, ¶ 109.)

The terms of the Denmark loan, which was frequently renewed (at least annually), had changed several times over the course of the loan. The loan had called for monthly payments in the past, and Trans Union was aware of nothing to suggest that such payments could not again be required. The procedures of Trans Union concerning this disputed item are typical of the many disputes brought froth by the Zahrans, which show no wrongdoing on the part of Trans Union.

Since Trans Union has demonstrated reasonable procedures concerning its reporting, the Court need not consider whether the Zahrans suffered any injury as a result of the inaccurate, but promptly corrected information.

### 3. Trans Union Did Not Violate 15 U.S.C. § 1681(i).

Paragraph 14 of the Complaint alleges that Trans Union violated Section 1681i of the FCRA. This provision governs the dispute process whereby consumers may request that Trans Union reinvestigate the information in their files. Section (a) of this provision states in part:

> (1) Reinvestigation required.-
> (A) In general.-If the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate free of charge and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

12

15 U.S.C. § 1681i(a)(1)(A). Accounts where Trans Union can establish the accuracy of the records it verified in response to Plaintiffs dispute do not violate the FCRA. See *Hargrow v. Long*, 760 F. Supp. 1, 4 (D.D.C. 1989) (where alleged defamatory statements were accurately reported, plaintiff failed as a matter of law to make out a claim under FCRA); *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 438-39 *(S.D.N.Y.* 1991) (holding credit bureau entitled to summary judgment on § 168e(b) and § 1681i claims where accuracy of bankruptcy filing in report was conclusively established and bureau had reinvestigated, confirmed accuracy, and notified consumer of results). For this reason, all claims that were verified by the reporting creditor upon request for investigation cannot survive a motion for summary judgment.

Trans Union also resolved all items contested by Zahrans within 30 days of each dispute. By March 17, 2000, 23 days after Robin Zahran's initial dispute, every item of information claimed as erroneous by Zahrans between February 22 and March 16 had been cleared from their reports (even though many had been verified as accurate and, as later demonstrated by the records of creditors, county recorders, and courts, were in fact accurate as initially reported). (See Facts, ¶ 65-8 8.) By April 24, 2000, Trans Union had updated or deleted eight additional non-derogatory items disputed by Zahrans. (Facts, ¶¶ 91-97.) Trans Union similarly responded in a timely manner to Zahrans disputes lodged on April 26, 2000, January 4, 2001, and January 15, 2001. (Facts, ¶¶ 103-108.) Therefore, Zahrans cannot demonstrate that Trans Union continued to report information that was inaccurate, or can no longer be verified, after the plaintiffs' request for reinvestigation.

Additionally, Trans Union has procedures in place to advise creditors that their records may be in error and need correction. Trans Union contacted several banks concerning the

disputed items and admonished them to ensure the reliability of their data. Beyond investigating disputed items, Trans Union attempted to ensure future accuracy in all accounts concerning its reporting creditors.

### 4. Trans Union did not Violate 15 U.S.C. § 1681n.

Punitive damages are available under 15 U.S.C. § 1681n when the reporting agency has willfully failed to comply with any provision of the FCRA. *Field v. Trans Union LLC*, No. 01C6398, 2002 WL 849589, at *7 (N.D. Ill. May 3, 2002). Plaintiffs' complaint alleges that Trans Union displayed willful and wanton violations of the Fair Credit Reporting Act. In order to establish a willful violation of the FCRA, plaintiffs must be able to demonstrate that Trans Union "knowingly and intentionally committed an act in conscious disregard for the rights of others." *Stevenson v. TRW*, 987 F.2d 288, 293 (5th Cir. 1993); *Cousin*, 246 F.3d at 372. The plaintiffs must set forth evidence that shows deliberate and purposeful actions taken against them. *Casella v. Equifax Credit Info. Servs.*, 56 F3d 469, 476 (2nd Cir. 1995); *Philbin*, 101 F.3d at 970. Typically, such willful noncompliance has been interpreted to involve misrepresentations or concealment of the inaccuracy from the consumer, but not malice. *Cousin*, 246 F. 3d at 372.

The mere existence of inaccuracies in Zahrans' credit reports does not itself amount to an act in conscious disregard of Zahrans rights supporting a finding of willful noncompliance with the FCRA. Zahrans do not show, through independent evidence, that Trans Union took "deliberate and purposeful action" that was directed specifically at them to make out a willful noncompliance claim. *Id.* Actually, to the contrary, Trans Union promptly responded to disputed items and removed them from the Zahrans' credit reports. Trans Union investigated alleged

14

errors and had repeated correspondences with the Zahrans concerning the status of their reports. Trans Union aided the Zahrans in exercising their rights under the FCRA, clearly an inappropriate situation to impose punitive damages. *Pinner v. Schmidt*, 805 F.2d 1258, 1263 (5th Cir. 1986) (punitive damages are proper when the agency attempted to hinder the consumers exercising of his rights under the FCRA). No violations of the FCRA exist here; Trans Union properly proceeded under the FCRA. As such, no detrimental effects on the Zahrans could be the product of willful noncompliance. Therefore, Trans Union is entitled to judgment as a matter of law on any claims under 15 U.S.C. §1681n.

### 5. Two Year Statute of Limitations Under the FCRA.

Beyond having no substantive merit to withstand a motion for summary judgment, several of the Zahrans' allegations are barred by the statute of limitations provided in the FCRA. Section 1681 p of the FCRA states that "an action to enforce any liability created under this subchapter may be brought... within two years from the date on which the liability arises...." 15 U.S.C. § 1681p. For a § 168le(b) violation, this two-year limitations period begins to run at the time of the issuance of a credit report which contains the alleged error. *Hyde v. Hibernia Natl. Bank,* 861 F2d 446, 448 (5th Cir. 1988).

Plaintiffs filed this lawsuit on February 9, 2001, claiming that defendants reported erroneous and false information to perspective creditors between January 1, 1997 and the present. (Plaintiffs Complaint, at ¶ 6.) Taking the facts in the light most favorable to plaintiffs, and assuming *arguendo* that any credit denials between January 1997 and February 9, 1999 were due to a report provided by Trans Union, plaintiffs were on notice as of the date of such denials, and

15

were required to bring actions for violations of the FCRA within two years of the denial. Plaintiffs claims for any alleged conduct by Trans Union giving rise to damages before February 9, 1999 are time-barred.

The Court grants defendants' motion for summary judgment as to Count I alleging violations of 15 U.S.C. § 1681, the Fair Credit Reporting Act, in its entirety.

## Count III - Fraud and Conspiracy

Count III of the Complaint purports to allege "Fraud and Conspiracy by Trans Union [sic] and Equifax." (Complaint at ¶¶ 26-30.) To prove a civil conspiracy to defraud claim under Illinois law, a plaintiff must establish two necessary elements: (1) an overt act of fraud in furtherance of the conspiracy, and (2) actual damages resulting from the conspiracy. *Caplan v. International Fidelity Insurance Co.,* 885 F. Supp. 175, 179 (N.D. Ill. 1995). Conspiracy to commit fraud is a combination of two or more persons to accomplish by concerted action an unlawful purpose or a lawful purpose by unlawful means. *Damato v. Merrill Lynch, Pierce. Fenner & Smith. Inc.,* 878 F. Supp. 1156, 1162 (N.D. Ill. 1995). It is a necessary element that the defendant must conceal, misrepresent, or wrongfully induce the plaintiff in an action for conspiracy to defraud. *Commercial Products Corp. v. Briegel,* 242 N.E.2d 317, 322 (Ill.App. Ct. 3d Dist. 1968).

Beyond the vague, conclusory allegations in their Complaint, Zahrans offer nothing in support of their claims of a conspiracy, a claim upon which they have the burden of proof. There is no alleged agreement, no violations of the FCRA, and no other alleged acts that would constitute an overt act in furtherance of the conspiracy to defraud. The Zahrans complaint cannot

16

withstand the initial inquiry concerning overt acts in furtherance a conspiracy. Thus, the Court need not consider whether damages resulted from the alleged conspiracy to defraud.

Additionally, Count III alleges violations of Illinois state law and jurisdiction in Federal District Court was proper under supplemental jurisdiction. Since the federal law claims have been dismissed before trial, it is appropriate to dismiss the state law claims for a lack of subject matter jurisdiction in this court.

The Court grants defendants' motion for summary judgment as to Count III alleging a conspiracy to defraud.

### Counts IV & V - Slander, Libel, and Negligence under Illinois State Law

Trans Union argues that it is afforded immunity from the Zahrans' defamation and negligence claims under two provisions of the FCRA - §§ 1681h & 1681t. These two provisions concern actions taken at different stages of a consumer reporting agency's contact with a consumer. 1681h concerns actions taken prior to a complaint of false information being filed and 1681t concerns actions taken after such a complaint is filed. *Aklagi v. Nationscredit Financial Services Corp.*, 196 F. Supp.2d 1186, 1195 (D. Kan. 2002).

Section 168lh(e) of the FCRA provides:

(e) Limitation of liability
Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse

17

action, based in whole or in part on the report [FN2] except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). This section pertains to actions of the consumer reporting agency prior to complaints of inaccurate information being made by the plaintiffs. *Aklagi,*196 F. Supp.2d at 1195. To meet the very high standard of malice or willful injury, plaintiffs must be able to show that when the consumer reporting agency disclosed a report with knowledge that the statement was false or acted in reckless disregard of whether the statement was true or false. *Cousin*, 246 F.3d at 375; *Dornhecker v. Ameritech Corp.,* 99 F.Supp. 2d 918, 931 (N.D. Ill. 2000). In other words, the standard requires the Zahrans prove that Trans Union took deliberate and purposeful actions to injure them in particular. The plaintiffs cannot meet this burden, as the record is void of any evidence or allegations demonstrating knowing or reckless conduct. *See Casella,* 56 F.3d at 476. Therefore, the Court grants qualified immunity to Trans Union concerning defamation and negligence claims for conduct occurring prior to complaints of inaccurate information contained in consumer credit reports by the Zahrans.

Section 1681t(b)(1)(F) of the FCRA provides:

No requirement or prohibition may be imposed under the laws of any State-- ...
(1) With respect to any subject matter regulated under ...
(F) Section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies

15 U.S.C. § 1681t. Thus, Trans Union is afforded absolute immunity for all actions within "the subject matter regulated under § 1681s," state law defamation and negligence claims. *Aklagis*, 196 F. Supp. at 1184. Trans Union's action taken to reinvestigate items disputed by the Zahrans falls squarely within the above section as a responsibility under the FCRA. *Id.* Accordingly, the Court grants absolute immunity to Trans Union for all

state law defamation or negligence action which arises out of conduct occurring after the Zahrans' notified Trans Union of reporting inaccuracies.

Additionally, Counts IV and V allege violations of Illinois state law and jurisdiction in Federal District Court was proper under supplemental jurisdiction. Since the federal law claims have been adjudicated in Defendant's favor, we decline to exercise jurisdiction over Plaintiffs' state claims. *See* 28 U.S.C.§ 1367 (c)(3) (stating that Court may decline to exercise jurisdiction over state claims if it has "dismissed all claims over which it [had] original jurisdiction.

## CONCLUSION

For the reasons set forth above, defendant, Trans Union's, motion for summary judgment is granted. This Court further concludes that Plaintiffs have abandoned their claims against Defendant LaChapple Credit Services because of the lack of service or process as well as failure to prosecute the case in any manner whatsoever as to this Wisconsin defendant. This case is hereby terminated. This is a final, appealable order.

SO ORDERED

ORDERED 3/28/03

Ronald A. Guzman
United States Judge